McConnel *vs.* Holobush *et al.*

MURRAY McCONNEL, plaintiff in error, *vs.* THOMAS HOLOBUSH, AUGUSTUS R. BURBANK and HOLOWAY W. VANSYCKLE, defendants in error.

*Error to Pike.*

A mortgagee who enters upon the mortgaged premises for condition broken, must account for the rents and profits actually received, or which might have been received by reasonable care and prudence. These must be credited as so much paid upon the mortgage, from year to year; first in extinguishment of the interest, and then of the principal.

A mortgagee in possession is authorized, and even bound, to lay out money to keep the estate in necessary repair, and to preserve it; but he is not authorized to make new improvements, and tack the expense to the amount due upon the mortgage, or pay it out of the rents and profits; except under very extraordinary circumstances.

Where improvements are made in good faith, by a party who believed he had made a valid purchase of the premises, and the expenditure was a judicious one for the benefit of the estate, such party may be allowed for them.

Where a bill or answer is not pertinent, or unnecessarily reflects upon the opposite party, such portions of it should be stricken out, at the cost of the solicitor so offending.

Only material facts, clearly and succinctly set forth, should be stated, either in a bill or answer, and neither suitors nor solicitors should be allowed to manifest their personal feelings upon the records of the Court.

On the seventh day of July, A. D. 1849, Murray McConnel filed his bill of complaint in the Pike Circuit Court, representing that one Mark W. Delahay, on the 18th of September, 1839, purchased of John Manchester the property known as the Naples ferry, together with certain lands described in the bill, which were conveyed to him by deed, duly acknowledged &c., for $9,000. That on the 11th day of October, 1839, one John Matthews, one of the defendants, then having or expecting to have some interest in said land and ferry, for the sum of $3,000, sold and conveyed the same to said Delahay. That on the said 11th of October, Delahay, being indebted to said John Manchester, in the sum of $2,700, due twelve months thereafter, secured the same by a mortgage upon said land, (not including the ferry) which mortgage was duly executed &c. That afterwards, to wit, on the 14th day of February, 1840, said Delahay, for the sum of $2,200—$200 to him in hand paid, sold and conveyed the said land and ferry to said McConnel, by deed &c., and gave him possession. That the said John Manchester was indebted to one William McKee, executor of Jesse McKee, deceased, and on or about the 10th of January, 1843, said McKee, as executor, filed a creditor's bill in the Pike Circuit Court against the said John Manchester, John Matthews and others; the object of which bill was to subject the debt due from Delahay to Manchester, to the payment of the debt due from Man-

chester to McKee, executor &c., and to sell the interest said John Manchester had in the lands, through and by virtue of said mortgage from Delahay to Manchester, to pay the debt due from Manchester to McKee. In that suit such proceedings were had as that, on the 8th of April, 1848, a final decree was had in favor of McKee, executor, directing the payment to him of the sum of $2,617 93, within ninety days, and that in default of such payment, the said land, or so much thereof as would be sufficient to pay the said debt, should be sold.

McConnel sets up that he is the owner of said land and ferry, subject only to the said mortgage from Delahay to Manchester, and that the object and intention of his bill is to be permitted to redeem said land from said mortgage. With that view he was ready to pay said McKee the amount of said decree, but that upon application to McKee for that purpose, he informed him, McConnel, that he, McKee, had no interest in said decree, but that he had sold all his interest therein to John Matthews, Thomas Holobush and Augustus R. Burbank, and that he, McKee, would not receive said money. That McConnel was then informed by D. A. Smith, solicitor for said Matthews, Holobush and Burbank, that they would not receive said money; that they denied the right of McConnel to pay said money or to redeem said land from said mortgage; but said Matthews, Holobush and Burbank claimed as purchasers from said McKee, that they had a right to sell said land and ferry to raise the money decreed to be paid, and that they should do so, without regard to McConnel's rights. That the said John Manchester and his wife are dead, and that the said John Matthews is administrator of said Manchester, and that no others than the said Holobush, Matthews, Burbank and the estate of the said John Manchester, have any interest in said mortgage or the money therein secured to be paid. Admits that the sum of money is due as stated by the decree, but that said parties are indebted to complainant in a much larger sum, for the rents, issues and profits arising from said lands and ferry &c., which should be applied in satisfaction of that decree. That neither Delahay nor McKee, as executor, have any interest in said land and ferry. That said Holobush, Matthews, and Burbank, have no interest in said land or ferry, except as they claim under said mortgage, and that that claim has been extinguished by said use and occu-

pation. That they retain possession of said land and ferry, and refuse to account for the profits &c., and insist upon their right to sell the land under the decree. Prays that he be permitted to pay off the mortgage and redeem the land &c.; that an account may be taken of said rents and profits of said land and ferry, and that he be put in possession thereof.

This bill was subsequently amended, alleging the insolvency and pecuniary embarrassment of Matthews, Holobush and Burbank, and they were enjoined from selling said land and ferry. Matthews, Holobush and Burbank answer, admitting the truth of the bill, except as follows: They deny that the deed of the 14th February, 1846, from Delahay to McConnel, was absolute, but aver that it was but a mortgage, to secure the payment of a debt of $1,500 or $2,000 due to him, one Vansyckle, and another. They deny that complainant has any title to the premises, but admit he might have had, if he had redeemed in time, but has not now a right to redeem. They deny that complainant offered to pay McKee, or that he refused to receive the money. They deny that they are indebted to the complainant for rents &c., or on any other account. Aver that, on the 18th June, 1845, McKee sold to John Matthews his interest in the land and the judgment &c., mentioned in the bill, and on the 25th of June, 1845, he sold two-thirds thereof to the other defendants. That respondents erected a warehouse on the premises in the fall of 1845, after McKee had obtained a title to the premises, under the decree against John Manchester, which was reversed, and before any steps had been taken to procure a reversal of that decree; which warehouse cost $1,100. They deny that they took possession of said land and ferry &c. prior to the 18th of June, 1845. They aver that they purchased of Thomas Manchester his interest in the premises on the 25th of April, 1848. And that at April term, 1848, McKee, as executor, obtained a judgment by confession against the defendant, John Matthews, as administrator of John Manchester, for the use of the defendants, for $980 21 debt and $480 29 damages. That in a suit by complainant against Delahay, to foreclose his mortgage before referred to, a decree was entered by agreement, extinguishing his claim against Delahay, and transferring Delahay's title to the complainant.

John Matthews died, and Holobush, as his administrator, appears and answers. Vansyckle was appointed administrator of John Manchester, in place of John Matthews, deceased, who appears and answers and admits the sale to and mortgage from Delahay, as charged in the bill. That no part of that mortgage was ever paid to intestate or his administrator, and claims the balance due on the mortgage, after deducting the amount of the decree in favor of McKee. Does not claim any interest in the land except to secure payment &c. That the sale by John to Thomas Manchester of the mortgage, and the foreclosure and purchase by Thomas, were fraudulent and void, and that at the time of his death, J. Manchester was indebted to others besides McKee, in the sum of $3,000, and among others to Vansyckle; and in proof of the fraud, refers to the decree in McKee's case.

The exhibits referred to, and filed with the bill and answers, are not necessary to an understanding of the opinion.

Proofs were taken of the erection of the warehouse, and of its value, also as to the annual value of the lands and ferry franchise, and also as to the solvency of the respondents of the bill. But these proofs are uncertain and indefinite, and not useful in the examination of the points decided.

On the 22d of Sept., 1849, this suit was heard before Minshall, Judge, upon bill, amended bill, answers thereto and replications, exhibits, depositions and other proofs, when the injunction was dissolved, and the bill dismissed with costs.

McConnel, the complainant below, sues out this writ of error.

M. McConnel, *pro se*, claims:

That he stands in the place of Delahay, as to this mortgage, and has the right to redeem from the same; and is not barred by the proceedings in favor of McKee against Manchester and others. Hubbel *vs.* The Adm'rs and Heirs of Bradwell, 8 Ohio, 227; Ormsby *vs.* Phillips, 4 Dana, 233; Stapp *vs.* Phillips, 7 Dana, 300; Watson *vs.* Phelps, 20 Wendell, 260; Henderson *vs.* Stuart, 4 Hawks, 256; Sands *vs.* Frost, 5 Pickering, 267.

Complainant claims the rents and profits from the defendants, upon the ground that he is the owner of the land, having the right to redeem, and that they occupy the position of mortgagees in possession of the mortgaged premises, and bound to pay rent to the mortgagor; first, to be applied to the payment of

the interest yearly, as the same accrued, and then to the payment of the principal.    And if so applied, the defendants would be indebted to him.    Revised Statutes of 1845, page 93, section 3; 2d United States Chancery Digest, p. 236, sec. 7, and p. 202, sec. 19; Tirrel *vs.* Merril, 17th Mass. Rep., 117; Bainbridge *vs.* Owen, 2 J. J. Marshall, 467 ; Saunders *vs.* Frost, 5th Pickering, 270 ; Reed *vs.* Reed, 10th Pickering, 398 ; Van Buren *vs.* Olmstead, 5 Paige, from 9 to 18.

The defendants claim compensation for building a warehouse on the premises, before the commencement of this suit.    To which complainant objects, and cites the following authorities to prove that they should not be paid therefor.    5 Gilman's Rep., Smith *vs.* Sinclair, p. 108; Reed *vs.* Reed, 10 Pickering, 398 to 401.

The complainant admits that the question of costs is within the discretion of this Court, and claims that, owing to the course pursued by the tenants in possession, in defending this suit, and refusing to account for rents and profits, they are in duty bound to pay all the costs.    Saunders *vs.* Frost, 5 Pickering, 273 and 274.

DAVID A. SMITH, for defendants in error :

The decree that was rendered at the April term, 1848, of the Circuit Court of Pike, in favor of McKee, executor of McKee, deceased, *vs.* The heirs of John Manchester, deceased, McConnel and others, was for a sale of all the right, title and interest of the parties to that suit, of, in and to certain real estate described in the decree, to pay and satisfy to said McKee, as executor, certain judgments against John Manchester and others; the said John Manchester having alienated fraudulently a certain mortgage (the oldest incumbrance on the property in controversy) to Thomas Manchester, and he having foreclosed the same and bought in the property on the 18th day of December, 1841.    (See master's deed to him 7th June, 1843, recorded 9th Sept., 1843.)    The decree of the 8th of April, 1848, so extinguished, or rather settled, the subsisting equities of the parties to the same; that they have no right to go behind the decree, and assert any equity originating before the decree.    If such a course of practice is tolerated, there will be no end to controversy, and nothing can possibly be accomplished by a final judg-

9

ment or decree, in the way of binding the interests or equities of the parties thereto. McConnel is claiming a right to redeem from a certain mortgage, and an account of rents and profits, all dating long before said decree. He does not pretend to assert any equity, having its origin since the decree. In the teeth of that decree, for the sale of his interest in the lands in controversy, he says he is the owner of the lands by virtue of a conveyance dating in 1840, and that he is entitled to an account of rents and profits of the same since 1843. In what does such a pretence differ from any case in which the lands of a defendant are to be sold by judgment or decree of Court? Could he be heard to allege against the execution of such judgment or decree, that he was the owner of the lands, and entitled to an account of the rents and profits ? If so, a plaintiff or complainant, who seeks the execution of a judgment or decree for the sale of lands to satisfy his demands as a judgment or decree creditor, may travel in a perfect and perpetual circle, and will never attain his right. Such a proposition is so preposterous that it only needs to be named, in order to be condemned, as absurd and unjust to the very last degree.

We have no more right to go behind the decree of April, 1848, to assert any equity, than the complainant in this case has. On this principle we cannot claim compensation for the warehouse we built in the fall of 1845. But if the decree of April, 1848, is to be disturbed as to any of its legal consequences, and against which we protest, and we are to be held answerable for the rents and profits since June, 1845, then for every permanent and valuable improvement to the property, made before the complainant proceeded to reverse the decree of the September term, 1844, we are, on equitable principles, entitled to reimbursement for the value of the same : because we made them after the strife was apparently ended by a decree of the Circuit Court, in which all the parties to the same were acquiescing when the improvements were made.

The improvements that may be made by a party to a suit *pendente lite,* he has no right to claim reimbursement for, on the principle, *pendente lite nihil innovitur.* No impediments ought to be thrown in the way of a mortgagor, or those claiming under him, when the right to redeem is properly asserted. If a mortgagee or his assignee could, before foreclosure, or during

the pendency of a suit to redeem, be allowed for permanent and valuable improvements, by an extravagant application of means for improvement, he could generally so embarrass the right of redemption, that it would (if not beyond the means of the mortgagor or his assignee,) be worth little or nothing. But not so in regard to improvements made after the foreclosure of a lien and sale, and where all the parties to the foreclosure are acquiescing in the same. If any of them afterwards become dissatisfied with the decree, and procure its reversal, and successfully assert a claim for rents and profits accruing before the reversal, can any thing be more manifestly equitable than that they should account for the increase in the value of the subject matter of controversy, when that increase was had or made before the movement of strife, to reverse or modify the decree? He that would have equity must do equity. See case Manchester and others *vs.* McKee, executor of McKee, 4 Gilman, 511; Smith *vs.* Sinclair, 5 Gilman, 108; The People on relation of McKee, executor, *vs.* Gilmer, ibid, 242.

Admitting, only for the sake of argument, that the defendants are indebted to the complainant for rents and profits, he cannot enjoin the execution of the decree, because there is no proof of their insolvency, and his remedy would be by action of debt or assumpsit.

Opinion by Mr. Justice CATON:

This bill was filed by the complainant, to redeem from a mortgage, executed by his grantor prior to the date of his conveyance. The mortgage was executed to John Manchester, on the 11th day of October, 1839, for $2,700. On the 10th of January, 1843, McKee, a judgment creditor of Manchester, filed a bill against him and others, to subject his interest in the mortgaged premises to sale, to satisfy his judgments; and on the 8th of April, 1848, a decree was entered in the Circuit Court, in obedience to a mandate of this Court, directing the defendants in that suit, or some of them, to pay to McKee the sum of $2,617 93, within ninety days, or that the premises be sold. The present complainant was one of the defendants in that suit. Pending the former suit, in June, 1845, McKee assigned his claim against Manchester to John Mathews, who shortly afterwards assigned two-thirds of the claim to Holobush and Burbank. Mathews

seems to have had possession of the premises, or a part of them, since some time in the year 1843, and Holobush and Burbank went into the joint possession with him, under their claim, in June, 1845, the time when they acquired their interest, and have since that time erected a warehouse upon the premises, at an expense of $1,100, and have enjoyed the rents and profits of the whole premises, and, as is alleged, have committed waste on the premises, which the complainant prays to have applied in extinguishment of the amount due upon the decree'and mortgage.

Previous to the filing of this bill, John Manchester died, and Mathews was appointed administrator of his estate, who was made a defendant, as well in his representative as in his individual capacity. Since the bill was filed Mathews has died, and the defendant Holobush was appointed administrator of his estate, and Vansyckle was appointed administrator *de bonis non* of the estate of John Manchester, deceased, and as such, was made defendant, appeared and answered. This is the substance of the facts, as established by the pleadings, exhibits and proofs, in this record, upon which the rights of the parties are to be determined, except as to the amount of the rents and profits. Although some allusion is made in the answers to the proceedings in all of the various suits, which have at different times been pending in this and in the Circuit Court, yet they were not made exhibits, nor were they produced upon the hearing, and, consequently, we cannot look into them to see whether the rights claimed by the complainant would be affected by them or not, except the decree rendered by the Circuit Court of Pike county, in the case of McKee *vs.* Manchester *et al.*, which was made an exhibit by the bill, and a certified copy of which was produced on the hearing.

The case then is simply this : McConnel purchased certain premises, subject to a mortgage. McKee became entitled to a part of the money due on the mortgage, and obtained a decree for the sale of the premises, to pay his claim. McConnel filed this bill against the assignees of McKee, and the administrator of the estate of the mortgagee, and seeks to disencumber the land by the payment of the amount due upon the mortgage, to those entitled to receive it ; and asks that certain rents and profits, received by the assignees of McKee, be applied in extinguishment of the amount due them. The case when thus simplified, presents no dif-

ficulty of sufficient importance to invite discussion. It is certainly not necessary to cite authorities, to show that the grantee of the mortgagor may file a bill, to redeem from the mortgage, and have it satisfied. The fact that a part of the money secured by the mortgage, has become due to other parties than the mortgagee, cannot affect this right. It is true that McConnel was a party to the suit, in which the right of McKee was established to a part of the money secured by the mortgage, but this in no way abridges his right to redeem, but the decree in that case rather confirms such right, for it authorizes any of the defendants in that suit to pay the amount decreed to McKee. No complaint can be made against the present complainant, because he did not interpose a defence there. The truth is, he had no defence, nor does he now pretend that he had any. He had nothing to say why McKee should not be declared to be entitled to a part of the money secured by the mortgage. It was a matter of indifference to him, to whom the money went. At the time that case was set for hearing, in 1844, he had no claim against McKee, or his assigns, for rents and profits, and, consequently, nothing to allege in diminution of their claim. If he had had such claim, then it would have been lost by his not having interposed it, when he had an opportunity. But McKee's assignees did not go into possession under that claim, till June, 1845, which was some time after that cause was set for hearing, and, consequently, he had no opportunity of setting up the rents and profits since received. Surely he must have a right to set up subsequent equities.

The rights of the defendants, as assignees of McKee, to an interest in or lien upon this land, were derived from and depend upon the mortgage, and by virtue of those rights they maintained the possession, and received the rents and profits; and their possession was to the extent of those rights, the same as the possession of a mortgagee under the mortgage. A mortgagee who who enters upon the mortgaged premises for condition broken, must account for the rents and profits actually received, or which might have been received by reasonable care and prudence. Van Buren vs. Olmsted et al., 5 Paige, 9. This amount must be credited as so much paid upon the mortgage, from year to year, first in extinguishment of the interest, and then of the principal. That rule, however, should only be applied,

in this case, to the extent of the defendants' interest in the mortgage, as assignees of McKee. And should the rents and profits exceed the amount due them, the excess cannot be applied in satisfaction of the balance due upon the mortgage, which goes to other parties; but the complainant may have a decree against them, for the excess, should there be any. It is true, that Matthews, one of the original defendants, was, at the time the bill was filed, administrator of the mortgagee, but he was in possession, not as such administrator, but as assignee of McKee, and hence the estate of Manchester ought not to be held responsible for any portion of the rents and profits received by him.

Almost the only new fact set up in the answer, which is sustained by the proof, is the erection of the warehouse upon the premises, by the defendants. For this they claim an allowance.

A mortgagee in possession is authorized, and even bound, to lay out money to keep the estate in necessary repair, and to preserve it; but he is not authorized to make new improvements, and tack the expense to the amount due upon the mortgage, or pay it out of the rents and profits, except under very extraordinary circumstances. Smith *vs.* Sinclair, 5 Gilm., 108. It was argued as if the record showed that this improvement was made after the premises were purchased by the defendants, under the first decree, in favor of McKee, and before that decree was reversed, and the sale to them under it set aside by this Court, as reported in 4th Gilman. Unfortunately the proper evidence of those proceedings is not found in this record, and we cannot base a decree upon the evidence of the facts found in a reported case. Were these facts properly established, and were we convinced that the improvement was made in good faith, the defendants believing that they had made a valid purchase of the premises, and that the expenditure was a judicious one, for the benefit of the estate, we think they should be allowed for them. And, as the case will have to be remanded, we think it but just and equitable that the defendants should be allowed to amend their answer, so as to insert the proper averments, and make the necessary exhibits, to prove the facts we have alluded to; but no other amendments must be allowed. Should the defendants not be allowed for the erection of this warehouse, then, in taking the account of the rents and profits, the use of the warehouse should be excluded; but if they are allowed for it, then they should

allow for its use. Upon this basis, we have not before us the necessary data upon which we can, satisfactorily, compute the amount with which the defendants should be charged.

The decree, therefore, will have to be reversed, and the suit remanded, with leave to the defendants to make the amendments we have specified, and with directions to the Circuit Court to enter a decree establishing the right of the complainant to redeem, by paying the amount, if any thing, due to the assignees of McKee; and by bringing into the Circuit Court, subject to its future order, the balance that shall be found due upon the mortgage, after deducting the amount decreed to McKee, as so much money paid at the date of that decree. The Circuit Court will also be directed to determine, whether the defendants are entitled to an allowance for the erection of a warehouse upon the mortgaged premises, according to the principles above laid down, and to take an account of the rents and profits of the mortgaged premises, for which the defendants are responsible, and of the waste committed by them on the mortgaged premises, if any, and to set off the same against the amount due to the defendants as assignees of McKee, and the amount, if any thing, which they shall be allowed for the erection of the warehouse. And if any thing shall be found due to the defendants Holobush and Burbank, that the complainant be decreed to pay the same to them. Holobush to receive one-third part thereof, as administrator of John Mathews, deceased. And if it shall be found, upon taking said account, that any thing is due to the complainant, a decree for the same be entered in his favor against the said Holobush and Burbank. One-third part thereof to be paid out of the estate of the said John Matthews, deceased, if there are assets in the hands of the administrator sufficient to pay the same.

The question of costs alone remains to be considered. Ordinarily, upon a bill filed to redeem, the complainant does not recover costs; and most frequently he has to pay costs to the defendant, although he obtains a decree in his favor. In this case, however, the complainant seeks other relief than that of a mere right of redemption. One object of his bill is to establish his right to rents and profits, and to have them set off against the amount due the defendants. In this case, also, a considerable portion of the depositions taken by the defendants, were

upon an entirely immaterial point, and quite unnecessary. Most of the answer, too, is either not pertinent, or unnecessarily and improperly reflects upon the opposite party, and upon motion in the Circuit Court would have been stricken out, at the cost of the defendants' solicitor. Only material facts, clearly and succinctly set forth, should be stated either in a bill or answer, and neither suitors nor solicitors should be allowed to manifest their personal feeling upon the records of or before the Court; and this, we hope, is the last time that we shall be called upon to notice so reprehensible a practice, by any one.

In the Circuit Court each party will have to pay his own costs, except the costs of the defendant Vansyckle, which must be paid by the complainant.

*Decree reversed.*