# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## THIRD GRAND DIVISION.

SEPTEMBER TERM, 1869.

AUSTIN SUMNER et al.

*v.*

JOHN M. WAUGH et al.*

1. ASSIGNEE OF A MORTGAGE—*holds subject to what defenses.* A mortgage, not being assignable by the common law, or by any statute in this State, it being a mere *chose in action*, a purchaser thereof takes it subject to all the infirmities to which it would have been liable in the hands of the assignor, except the latent equities of third persons of whose rights he could know nothing.

2. A mortgagor of lands sold and conveyed the same to a third person, subject to the mortgage. Such grantee sold to the mortgagee, the mortgage to be taken in part payment of the purchase price, and to be given up and canceled, as shown by a written contract between them to that effect. Afterward the mortgagee assigned the mortgage to a person who had notice of the rights of the vendor of the lands under such contract, and it was *held*, the assignee took the mortgage subject to those rights.

---

* This and the case following, were submitted at the September term, 1869, but were unavoidably omitted from the report of the cases of that term.

3. The mortgagee purchaser, going into and retaining possession, under his purchase, could allege nothing against the binding force of the contract under which he had agreed to surrender his mortgage as a part of the purchase price of the land, and his assignee, under such circumstances, would hold no better position in that respect.

4. And where such vendor of the mortgagee, upon his own purchase, and prior to his sale to the mortgagee, executed a mortgage on the same premises, to secure a part of the purchase money due to his vendor, the first mortgagor, his subsequent contract with his vendee, the original mortgagee, under which the first mortgage was to be canceled, would operate to make the lien of the second mortgage superior to that of the first, whether in the hands of the original mortgagee, or of his assignee with notice.

5. Same — *of the mode of enforcing the assignee's rights.* In order to enforce such equities as might remain to the assignee, if any, under such circumstances, a foreclosure should be had of the second mortgage, which had thus become the prior lien, and such lands as were embraced therein, not included in the mortgage held by the assignee, should be first exhausted to satisfy such prior lien, before resorting to those embraced in both mortgages, and any balance remaining due on the prior lien, to be satisfied out of lands embraced in both mortgages, and the residue of the proceeds of the lands covered by both mortgages, applied first, to satisfy the claim of the party who sold to the original mortgagee, and next, what might be due to the assignee of such original mortgage.

6. Same — *what constitutes notice in such case, to the assignee.* The vendor of the original mortgagee, in such case, commenced a suit in chancery, in the county in which the property was situate, to compel a specific performance of the agreement in respect to the surrender of the mortgage, and service of process therein had upon the party executing the contract, and the pendency of that suit was held to be notice to the assignee of the mortgage so to be surrendered, of the equities of the vendor of the land, under such agreement.

7. Rescission of contract — *by bringing suit at law.* In order that the bringing of a suit at law shall operate to show an election to rescind a contract between the parties, it should appear that the subject matter of such contract was involved in the suit.

8. Allegations and proofs — *must correspond.* Upon a simple bill for foreclosure, filed by an assignee of the mortgage, the complainant can not obtain relief by being substituted to the rights of one of the defendants who sets up a prior equity, the pleadings not being framed with the view to such relief.

APPEAL from the Circuit Court of Peoria county; the Hon. SABIN D. PUTERBAUGH, Judge, presiding.

The opinion states the case.

Mr. E. S. SMITH, for the appellants.

Messrs. McCoy & STEVENS and Mr. D. McCULLOCH, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, brought originally to the circuit court of Mercer county, and by change of venue taken to the Peoria circuit court, the object of which was, to foreclose a mortgage alleged to have been executed by John M. Waugh and wife and Henry B. Ellis and wife to Benjamin T. Sisson, and by him assigned to the complainants. Waugh and Ellis and Sisson were made parties defendant, together with Thomas B. Ellis, and others named, on the allegation that they claimed to have some interest in the lands described in the mortgage, as purchasers or otherwise, and that the interest accrued subsequent to the execution of the mortgage, and that such interest was subject to the rights and interests of the complainants.

The mortgage was alleged to have been executed on the 15th of February, 1858, to secure the payment of $9,280.58, payable on or before the 20th day of July, 1862, with interest annually, at the rate of ten per centum per annum, and to have been assigned to complainants on the 8th day of February, 1862, by an assignment executed and delivered on that day.

All the defendants, except Thomas B. Ellis and Henry B. Ellis, were defaulted. In their answer they give a history of the transaction out of which the mortgage arose.

It would appear that John M. Waugh was the owner of certain lands at Richland Grove, in the county of Mercer, includ-

534          SUMNER *et al.* *v.* WAUGH *et al.*          [Sept. T.,

Opinion of the Court.

ing the premises mentioned in the mortgage, and arranged with Sisson, his son-in-law, to erect a steam flouring mill upon it, Waugh to own one-third and Sisson two-thirds. Before the mill was completed, Waugh conveyed to Henry B. Ellis, his brother-in-law and son-in-law also, an undivided interest in the lands; thereupon, Waugh and H. B. Ellis executed the mortgage in question, to Sisson, to secure him for the money he had advanced in the erection of the mill, which was the entire interest of Sisson in the property. While the mill was in the course of erection, Thomas B. Ellis, also a brother-in-law of Waugh and the brother of Henry B., sold to Waugh and Sisson a large amount of machinery and fixtures for the mill, worth about $6,000, and afterward, he sold to Waugh and Ellis machinery amounting to about $2,000. Waugh was also engaged in retailing dry goods, and he and Henry B. had became involved in debt, not only to Thomas B. Ellis, but to others, and to secure Thomas B., they proposed to sell to him the store, mill and lands attached thereto, to which Thomas assented, taking a deed therefor on the 5th of May, 1858, for the sum of $26,417.65, subject to the mortgage of Sisson, described in complainants' bill; and on the same day he purchased their entire stock of dry goods, groceries, horses, mules, etc., at a valuation of $4,700, taking a bill of sale of the same, and, after deducting his own claim and Sisson's mortgage, a balance was found against Thomas B. of $14,989.54, to secure which he executed to them notes and a mortgage on the land purchased, except five acres thereof.

It appears Thomas B. run the mill some time, and then, on the 30th of September, of the same year, sold out, as he says, to Waugh, Sisson and one John B. Rathbun, also a brother-in-law of Waugh, all the property, real, personal and mixed, on the terms stated in the following contract of that date, signed by Sisson and Rathbun, of the second part, and Thomas B. Ellis, of the first part:

"Articles of agreement made and entered into this thirtieth day of September, A. D. one thousand eight hundred

and fifty eight, by and between Thomas B. Ellis, of Richland Grove, Mercer county, and State of Illinois, of the first part, and Benjamin T. Sisson & John B. Rathbun, of the same place, of the second part.

" Witnesseth, that the said party of the first part, for himself, his executors, administrators, or assigns, agrees to sell, release and convey, to the said parties of the second part, all his paid-in interest in the Richland Grove Steam Mill, store, and lands attached to the same, amounting to ten thousand dollars, more or less, as shall appear from authenticated bills rendered at the final closing up of this contract, which shall take place within three weeks from this date, when the said party of the first part shall make to the said parties of the second part, their heirs, executors, administrators or assigns, a good and sufficient deed of conveyance of all the lands, mills, house, and all other appurtenances of whatsoever kind, as set forth in a certain mortgage given by the said party of the first part to John M. Waugh & Henry B. Ellis, dated June 5th, 1858, reference to which will fully explain boundaries, conditions, etc.; also for a certain mortgage given to John M. Waugh by said party of the first part, for the payment of eleven hundred and forty dollars, on five acres, and appurtenances, out of the south-east corner of the south-east quarter of the south-west quarter of section No. (16) sixteen, township fifteen (15), one (1) west of the fourth (4) principal meridian, and to yield up to the said parties, or their authorized agents, all of the aforesaid premises peaceably, at the signing of this article, and the said parties of the second part agree to and with the said party of the first part, that they will make over the balance, after deducting the amount held by Benjamin T. Sisson, $9,280.00, and the said ten thousand dollars, more or less, paid in by the said party of the first part, and sold to John B. Rathbun (the said John B. Rathbun agreeing to pay to the said party of the first part, the said sum of ten thousand dollars at the expiration of seven years, secured by mortgage on the premises sold, and interest at ten per cent per annum; at the end of three years the said

536        Sumner *et al. v.* Waugh *et al.*        [Sept. T.,

Opinion of the Court.

Rathbun agrees to pay the interest then due, if convenient, if not, to give additional security for that amount, and so on annually until the expiration of the said seven years), by mortgage on the premises in the same manner and on the same or like terms as the said parties of second part may agree with the said John M. Waugh, and it is further agreed, that all the parties named in this article shall deliver up all bonds, mortgages, deeds, and receipts and papers of whatsoever kind, relating to their contract, so soon as the same is lawfully canceled. The said parties of the second part agree to assume the payment of the following bills of goods bought by the said party of the first part in St. Louis, viz. : Memick & Scudder, grocery bill, of $311.55, at 30 and 60 days, dated September 2d, 1858, Jacob S. Merrell's job bill of $43.95, and Fife, Hubbard & Vogel's shoe bill, $242.30, and bill of dry goods bought of Campbell (bill not rendered yet), at six months.

" And it is further agreed that said mill shall be kept insured by the said parties of the second part, to commence as soon as a policy can be obtained, and kept in good running order, usual wear and tear and elements excepted, and for the faithful performance of all the foregoing articles of agreement, the said parties severally bind themselves each in the penal sum of ten thousand dollars lawful money of the United States. In testimony whereof the said parties hereunto set their hands and seals the day and year first above written."

It is alleged by T. B. Ellis that, by some arrangement between Waugh, Sisson and Rathbun, Waugh was not to, and did not, sign the contract as a party to it, though he was really a party, and so understood by all.

It is also alleged that, upon this contract being made, Waugh, Sisson and Rathbun went into possession of all the property, receiving the profits of it, selling the merchandise, and running the mill, and have ever since enjoyed the same, but refused to comply with their contract.

It is also alleged that, on the 26th of March, 1861, he, Thomas B. Ellis, filed a bill of complaint against Waugh, Sis-

son and Rathbun, in the Mercer circuit court, for a specific performance of this contract, which bill was pending at the time complainants took the assignment from Sisson, of the mortgage. The prayer of the bill, among other matters, was that Sisson should be compelled to release this mortgage, and surrender the notes therein described, to be canceled. It is alleged that Sisson had been summoned on that day to appear and answer the bill, and that the summons was served upon him, and that Waugh, Sisson and Rathbun had filed their separate answers to the bill, and the cause brought to issue, and was still pending.

It is claimed by T. B. Ellis, that the mortgage, only, having been assigned to the complainants, his right was equitable only, but they, T. B. Ellis and H. B. Ellis, had an equitable right to have the same released prior to the assignment to complainants. They, the complainants, took the assignment subject to the rights of Ellis; that, as they took the assignment pending the bill, they took it subject to any decree which might be rendered against Sisson, and it is alleged complainants had constructive notice of Ellis' equities, by the pendency of this bill.

Thomas B. Ellis also, after replication to his answer, filed a cross-bill against the complainants, setting up the same facts as are contained in his answer, and alleging that he was always willing to comply with the contract on his part, and use all the means in his power to induce Waugh, Sisson and Rathbun to settle with him within the time fixed in the contract, and repeatedly offered to, and did, render authenticated bills, as required by the contract; that he tendered a deed of the property to Sisson and Rathbun, duly executed, within the time required by the contract, and that he filed a copy of the deed with his bill. He alleged the transfer of the mortgage by Sisson to complainants, the defendants in the cross-bill, was fraudulent, and that they knew, before the assignment, of his rights in the premises. The bill prayed that the defendant be barred from a foreclosure of the mortgage, and be required to

538          Sumner *et al. v.* Waugh *et al.*          [Sept. T.,

Opinion of the Court.

satisfy the same upon the record, and an answer required, under oath.

The complainants answered under oath, not admitting any knowledge of any of the facts stated in the bill, and denied all the allegations thereof, and denied all information, save by the cross-bill. They admit they claimed the mortgage in virtue of the assignment by Sisson, of February 8, 1862; that they had filed their bill to foreclose the same, and deny that the assignment was fraudulent in any respect, and that they had no knowledge of the contract set up in the bill, nor any information or belief about it, save as informed by the cross-bill. A replication was put in to this answer.

The court, on the bill of complainants, decreed in favor of the defendants, and in their favor as complainants in the cross-bill, and dismissing both bills. To reverse this decree, dismissing complainants' bill of foreclosure, they appeal to this court.

Much testimony was taken on the hearing, the principal and most important part of it that of the parties defendant, and of complainants and defendants in the bill for a specific performance of the contract of September 30, 1858, which it is unnecessary to detail. The points made by appellants are alone necessary to be considered.

The first point made by appellants is, that a mortgage security, valid in its inception, and free from fraud, in the hands of an assignee, is good against a latent equity residing in a third party, no matter when the latent equity existed, and the assignee will be protected by a court of equity, and in this connection they insist that the pendency of a suit is not notice, unless the property is described so as to be unmistakable, and the prosecution of the suit must be active and vigilant, and reference is made to *Olds* v. *Cummings,* 31 Ill. 192; *Worden* v. *Williams,* 24 id. 74, and *Rodgers* v. *Kavanaugh,* id. 584.

The mortgage in question was assigned by an instrument in writing, acknowledged before a notary, and, not being assignable by the common law, it being a *chose in action,* or by any law of this State, the right vesting in the assignee thereby was

an equitable one only, to be enforced in a court of equity. But when a person buys that which is not assignable at law, relying upon a court of equity to protect and enforce his rights, he takes it subject to all the infirmities to which it would have been liable in the hands of the assignor. This is the doctrine of *Olds* v. *Cummings*, and though it is there said the assignee would be protected against the latent equities of third persons of whose rights he could know nothing, it implies he would not be protected against such equities, had he notice of them. So, in *Fortier* v. *Darst*, 31 Ill. 212, it was held, that, by taking an equitable title, which can be enforced only in equity, the title is taken with all the equities and infirmities existing against it, and can claim nothing under it which his assignor could not have claimed. Equity deals with the purchaser of an equitable title as the law deals with the purchaser of a legal title, and regards the purchase as incapable either of defeating rights or creating them. The true principle is, that the purchase of an equity simply gives the purchaser the estate which he buys, in the condition in which it is when bought, without giving it additional validity, on the one hand, or prejudicing his right, on the other, to fortify his acquisition by bulwarks or safeguards, obtained from other quarters, as was said by STORY, J., in *Flagg* v. *Mann*, 2 Sumner, 487.

Upon the other branch of the proposition, that the pendency of the suit to enforce the performance of the contract of September 30, 1858, was not notice, the property described in the bill not being unmistakably described, and its prosecution was not active and vigilant, *Worden* v. *Williams*, and *Rodgers* v. *Kavanaugh*, are cited.

It is urged, in support of the proposition, that there was not such a statement in the bill filed for performance as legally amounts to a notice, the bill charging that the contract was made with Waugh, Sisson and Rathbun, while the written contract was signed by Sisson and Rathbun only.

In the view we have taken of this case, we do not deem this an important feature in it.

540          Sumner *et al. v.* Waugh *et al.*          [Sept. T.,

Opinion of the Court.

The controlling facts are, there was this bill pending, for a specific performance of the contract of September 30, 1858, to which Sisson was certainly a party, and a subpœna to appear and answer had been served upon him. That contract was set out in the bill, by which it appeared that the mortgage in question had been disposed of by Sisson. It had become a part of the purchase price of the premises he, with others, purchased of appellees, and of which he was put in possession. It was not, therefore, in his power to rescind the contract without surrendering the possession. While he held the property the contract was binding upon him. He was bound to deliver up the mortgage to be canceled. The second, third and fourth points made by appellants relate to this contract of September 30th, alleging an inherent infirmity in it, such as would prevent a court of equity from enforcing it.

It may be it would not be enforced in a court of equity, still it is apparent, from the contract itself, that Sisson and Rathbun purchased the property incumbered by this mortgage, and it was to be delivered up by him, for such is the true interpretation of the language of the contract. It was a part of the price of the premises sold. Sisson went into possession, and, for aught that appears, is yet in possession, and being so, still holding it, he can allege nothing against its binding force, nor can the complainants, his assignees of the mortgage.

The remaining point made by appellants is, that this contract of September 30th, was rescinded by Ellis by his bringing a suit against Sisson and Rathbun in the Rock Island circuit court, in December, 1858, in an action of assumpsit for the amount of his paid-in interest, claiming $15,000. If this was so — if the suit had been brought by Ellis to recover his advances which made up his "paid-in" interest in this property — it would have been an election, and would have amounted to a rescission of the contract, on the authority of the case of *Herrington* v. *Hubbard*, 1 Scam. 569. But the record furnishes no evidence of the nature or purpose of this action, and we can not say that it was of such a nature as to operate as a rescission.

Upon the whole record, we have come to this conclusion: That the pendency of the suit in 1861, to enforce the contract of September 30, 1858, was notice to appellants, and they took the assignment of the mortgage subject to all the equities attaching to it by force of that contract. As we understand that contract, this mortgage was to be canceled, and as Sisson went into possession of the premises, and retained possession under this contract, and as, by it, appellee, T. B. Ellis, was to have a lien on the property for his "paid-in" interest, whatever it might be, neither Sisson nor the complainants, his assignees with notice, can now set up that mortgage as prior to the lien of T. B. Ellis, at least to the extent of his paid-in interest.

This contract postponed also, the mortgage in question, to the mortgage executed by T. B. Ellis to Waugh and H. B. Ellis. They were not parties to it, and could not be bound by its provisions. Although the contract seems to contemplate that their mortgage was also to be canceled, it does not appear how, or in what mode, and not being parties to the agreement they can not be affected by it. It is, therefore, the first lien on the property, and must be so held. The whole case, somewhat complicated, it is true, shows a contest between equities. That the complainants have some which should have been regarded by the circuit court and decreed to them, we can not doubt. The bill should not, therefore, have been dismissed.

In order that the equities of the complainants may be enforced, it seems necessary that there should be a foreclosure of the Waugh & Ellis mortgage.

As that mortgage contains lands which are not embraced in the Sisson mortgage, those lands, so far as now appears, should be first exhausted toward the satisfaction of the Waugh & Ellis mortgage before recourse is had to the property described in the Sisson mortgage.

As to the claim urged on the part of the complainants, that they have an equity to be substituted to the rights of Waugh in the Waugh & Ellis mortgage, to the extent of their claim

against Sisson, arising out of the transaction by which they took the Sisson mortgage, in consequence of alleged representations on the part of Waugh that the mortgage was good and valid, that question is not properly before us under the pleadings, and has not been considered.

The pleadings are not framed with a view to any relief as to the Waugh & Ellis mortgage, or as to any substitution of the complainants to the rights of Waugh in the Waugh & Ellis mortgage.

Leave will be given to amend the pleadings as the parties may be advised, and take further proofs.

If the Waugh & Ellis mortgage be found to be a valid and subsisting one, the proceeds of the sale of the lands contained in it which are not embraced in the Sisson mortgage should first be applied toward its satisfaction, and any unsatisfied residue should be paid out of the proceeds of the sale of the other property contained in both mortgages, and the balance of the last named proceeds should be paid first to satisfy what is due T. B. Ellis for his "paid-in interest," to be ascertained by the master in chancery, and next, what may be due complainants on the mortgage in question.

The decree is reversed and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*