EMMA MATHES *et al.*

*v.*

MORITZ J. DOBSCHUETZ.

1. REAL ESTATE—*improvements made thereon without consent of the owner.* Improvements made upon real estate by one who has no title or interest in it, without the consent of the owner of the fee, become a part and parcel of the land, and the title thereto becomes vested in the owner of the fee.

2. INFANTS are incapable of consenting to the making of improvements by a stranger on their real estate, so as to give him or his creditors any interest or claim thereto.

3. FRAUDULENT *disposition of property by debtor.* If a debtor, for the purpose of covering up his property to keep it from the reach of creditors, puts it into improvements on the land of his minor step-children, who are in no way parties to his fraudulent purpose, the improvements will become the property of such step-children, as a part of the land, and can not be reached either by such debtor or his creditors.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. WILLIAM WINKELMAN, for the plaintiffs in error.

Mr. WILLIAM H. UNDERWOOD, for the defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, filed in the circuit court of St. Clair county, by the defendant in error, Moritz J. Dobschuetz, against the plaintiffs in error, Emma Mathes, Fritz Mathes, Christian Gerhard and Maria Gerhard, to subject certain real estate to the payment of a claim held by the defendant in error against Christian Gerhard.

The defendants answered the bill, and replication was filed. The cause was heard upon evidence taken before the master, and a decree rendered directing a sale of the real estate, and out of the proceeds of the sale $500 was directed to be paid to Emma and Fritz Mathes, and complainant's debt and costs of suit were to be paid from the balance.

It appears, from the evidence preserved in the record, that, in the year 1856, Henry Mathes died testate; that, by his will, he devised to his two children, Emma and Fritz Mathes, lot 87, in the town of West Belleville; that, in the year 1857, Maria Mathes, the widow of deceased, married Christian Gerhard.

It also appears that, about the year 1866, this lot was graded and a house erected thereon; that, before the improvement, the lot was worth about $300, but after it was graded and the house built, it was worth some $2000. The complainant introduced proof which tended to establish the fact that the improvement made on the lot was done by Christian Gerhard with his own means. The weight of the evidence, however, shows that the grading was mainly done by Fritz Mathes; that the house erected cost $820—$520 of which was paid by Maria Gerhard from money she received from her mother, and the balance was paid from the rents of the property. This is sworn to by

Christian and Maria Gerhard, and they seem to be corroborated by Nagel, who built the house by contract.

It also appears that Emma and Fritz Mathes were minors. At the time the cause was tried, one was 17 and the other 16 years old. They had resided with their mother and step-father from the time of the marriage. Christian had received the rents of the property and paid the taxes.

The complainant proved that, on the 4th day of November, 1868, he obtained a judgment in the circuit court of St. Clair county, against Christian Gerhard, for $291.50, upon which, on the 9th day of November, 1868, an execution issued, and was levied on the lot, which was, on the 15th day of March, 1869, sold for the amount of the judgment and costs, and purchased by the complainant. The lot not having been redeemed, the bill was filed for the purpose of reaching the improvements made upon the lot, or the value of the property over and above the widow's dower and the value of the lot had no improvements been made thereon.

We are aware of no principle of equity upon which the decree rendered in this case can be sustained.

The preponderance of the evidence tends to prove, and, in our opinion, fairly establishes the fact, that the larger portion of the money that paid for the improvements on the lot was furnished by the widow of the deceased, who had dower in the premises. The rest came from rents derived from the property; but were it otherwise, and had the improvements been made by Christian Gerhard from his own money, the decree could not be sustained.

The owners of the fee of the lot were minors. It is not pretended that a contract was made with them or their guardian by which Christian Gerhard had any right or authority to erect a house or make any improvements upon the premises. It is not claimed that they consented, or even at law could consent, to the improvements claimed to have been placed on the property by Gerhard.

If, then, Gerhard erected a house on the lot of these minors without their approbation or consent, did this give him any

interest in or title to the property? The solution of this question is readily obtained by reference to a few well settled principles.

It will be conceded that the term "real estate" embraces not only lands, but all improvements of a permanent character placed upon real estate are regarded as a part of the land. In the case of *Dooley* v. *Crist*, 25 Ill. 556, this court held that, where a stranger constructs a building upon the land of another without his consent, it becomes a part of the land, and he would become a trespasser by removing it. It is said in Hilliard on Real Property, vol. 1, page 5: If one man erect buildings upon the land of another, voluntarily and without any contract, they become a part of the land, and the former has no right to remove them. Such buildings are, *prima facie*, part of the realty.

The improvements made upon the property in controversy were placed there without the consent of the owners of the fee. They were constructed by a stranger to the property. He neither had title nor interest in it. The improvements, when made, became a part and parcel of the land, and the title to them became vested in the owners of the fee, unless there are facts connected with this case to take it out of the operation of the general rule.

It is urged by the defendants in error that Gerhard invested his own money in improvements on the lot of these minors for the purpose of defrauding his creditors. It is true, Gerhard was insolvent, and did not pay his debts, but the record fails to show that he fraudulently covered up his property to keep it from the reach of creditors; but even if such was his design, there is an entire want of evidence to prove these minors, in the slightest degree, were parties to the fraud. Before their rights could be affected, it must affirmatively appear they were parties to the fraudulent intent of Gerhard. His intent to hinder, delay or defraud his creditors, as has been repeatedly held by this court, is not sufficient. *Ewing* v. *Runkle*, 20 Ill. 448; *Meixsell* v. *Williamson*, 35 ib. 530.

It is not questioned but there are cases where a party conveys property to another to defraud creditors which he may not be able to recover back, yet it may be reached by his creditors, but this is not a case of that character.

In this case, we see no principle upon which Gerhard could recover of the owners of the fee for improvements, nor do his creditors stand in any better condition.

The owners of the lot did not, nor were they in law capable of contracting with Gerhard, and whatever money he may have invested on the lot was placed there at his own risk, and it can neither be reached by him nor his creditors. *Washburn* v. *Sproat*, 16 Mass. 449.

The defendant in error, by the sale of the lot upon his judgment against Gerhard, acquired no title to the premises, for the plain reason that Gerhard had none to be sold or acquired. Neither had he, from the facts disclosed by this record, a standing in a court of equity.

The decree will be reversed and the bill dismissed.

*Decree reversed.*