## Philander L. Cable et al.

### v.

## Thomas B. Ellis et al.

*Filed at Ottawa March 22, 1887.*

1. PRACTICE—*what proceedings allowable in trial court after reversal and remandment.* Where a judgment or decree of the circuit court is re-versed, and the cause remanded for "other and further proceedings in con-formity with the opinion" of this court, the circuit court will be concluded by the legal principles announced by the appellate tribunal; but it does not necessarily follow that other facts may not be proved, within the principles announced, and amendments made, which obviate objections to the granting of relief or to the allowance of a defence.

2. In the case of the reversal of a decree, and the remandment of a cause without specific directions, the circuit court has the power to allow amend-ments to the pleadings, and to permit the introduction of other evidence not inconsistent with the principles announced in the opinion of the superior tribunal. Even after a third remandment, amendments may be allowed, on reasonable terms, so that neither party will be surprised or unreasonably de-layed thereby; and so may a stranger to the record be allowed to intervene, upon a proper showing made.

3. FORMER ADJUDICATION—*what may be considered on a second appeal.* Where this court, on appeal, has considered the case on its merits, and found the equities between certain of the parties as presented by the pleadings, one of the defendants can not, under the guise of exhibits to his cross-bill, bring all the previous pleadings and evidence into the case as new matter, and thus require this court to reconsider questions already passed upon by it.

4. CROSS-BILL—*its requisites.* A defendant filing a cross-bill is not re-quired to recite or set out in the same any of the pleadings or proceedings under the original bill.

5. SAME—*in whose favor relief may be granted on cross-bill.* The complainant in a cross-bill will have no right to ask affirmative relief in favor of other persons who are parties before the court, and capable of carrying on their own litigation and protecting their own interests.

6. PURCHASER *pendente lite—how far bound by the result in the suit.* A purchaser of real estate *pendente lite*, under such circumstances as that the doctrine of *lis pendens* is applicable, and those claiming under him, will be bound by the result of the pending litigation.

7. IMPROVEMENTS—*whether regarded as a part of the realty—and of an allowance for improvements—charging for use and occupation.* As a general rule, improvements made upon real estate, of a fixed and permanent

character, and attached to the realty, by one who has no title or interest in the premises, and without the consent of the owner of the fee, become a part of the realty, and vest in the owner of the fee.

8. Where, however, improvements upon real estate, of a permanent character, are made in good faith by one in possession, believing himself to be a *bona fide* purchaser or owner for value, and under circumstances justifying such belief, and the expenditure is reasonable in amount and of benefit to the estate, allowance may, in a court of equity, be made therefor, in a case where the title is found to be in another; but the person claiming such allowance will be charged with the value of the use and occupation of the premises.

9. But there is no principle of law permitting the owner or mortgagor, or his grantees, or a subsequent purchaser with notice of prior equities of the first purchaser, to make improvements on the premises and have a prior lien therefor, but such improvements will pass upon sale of the premises.

10. So where, during the pendency of litigation respecting the title to a tract of land, and the equities of the parties therein, a person acquired the title or interest of one of the litigants and afterward became involved in the same litigation, still pending, he allowed parties to go upon certain lots into which the premises were divided, and make improvements thereon, telling them he could make no title, but agreeing to convey to them in case he should succeed in the suit, the court finally found against his title, and the parties improving the lots intervened, and sought to be allowed for their improvements, and the court dismissed their petition, it was *held,* that the decision was correct, the intervenors not being *bona fide* purchasers, or even purchasers at all.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Peoria county; the Hon. N. M. LAWS, Judge, presiding.

Mr. C. M. OSBORN, for the appellant Cable.

Mr. C. DUNHAM, for the intervening petitioners.

Mr. GEORGE W. SPAHR, and Mr. JOHN MUCKLE, for the appellee Ellis.

Mr. WILLIAM JACK, and Mr. W. W. RATHBUN, for the appellee Rathbun.

Mr. R. L. LYONS, and Mr. JAMES S. MURRAY, for the appellees the heirs of Austin, Sumner & Co.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

By the appeal from the judgment of the Appellate Court for the Second District, affirming the decree of the circuit court, this case is for the fourth time brought before this court,—first, as *Sumner et al.* v. *Waugh et al.* 56 Ill. 531, and thereafter as *Cable* v. *Ellis et al.* 86 id. 525, and *Ellis et al.* v. *Sisson et al.* 96 id. 105. In the first of these cases, such of the facts as were thought to be necessary were stated in the opinion, and accompanying the opinion in the other two cases will be found carefully prepared statements of the facts as they had then been developed.

When the cause was last before us, the decree of the Appellate Court was reversed, "and the cause remanded for further proceedings in conformity to this (that) opinion." And in remanding the cause to the circuit court, the form of the order of the Appellate Court was: "Therefore, in obedience to said command, it is ordered by the court, that the decree of the circuit court of Peoria county, in this behalf rendered, be reversed, annulled, set aside, and wholly for nothing esteemed, and that this cause be remanded to the circuit court of Peoria county, for other and further proceedings in conformity to the opinion of the Supreme Court aforesaid." After the cause had been re-docketed in the circuit court, appellant Cable exhibited his cross-bill, and made all the parties to the litigation, and then before the court, parties defendant thereto, and some sixteen persons, including the Rock Island and Mercer County Railroad Company, were permitted to file petitions in the cause, as intervenors whose rights were said to have been acquired since the commencement of the litigation,—and the propriety of this action of the court is questioned.

By the 81st section of the Practice act, (Starr & Curtis' Stat. p. 1839,) it is provided, "that the Supreme Court, or Appellate Court, in case of a partial reversal, shall give such

judgment or decree as the inferior court ought to have given, * * * or remand the cause for further proceedings, as the case may require." In construing this language of the statute, in *Chickering* v. *Failes*, 29 Ill. 294, it was said: "On the previous trial, the court deemed it improper to render a decree in the case, but regarded it as equitable, and conducive to justice, that it should be remanded for further proceedings. The whole question grows out of the fact that the directions to proceed are general. If these general directions to the court below limit its power only to act upon the record of the case as it then existed, under the rules announced in the opinion, then the amendment of the answer, and the reception of additional evidence, was unwarranted. That the court below is concluded by the legal principles announced by the appellate tribunal, is undeniable. But it by no means follows that other facts may not be proved, within the principles announced, and amendments made which obviate objections to the granting the relief sought, or to the allowance of a defence interposed. * * * When a reversal of the decree or judgment occurs, the judgment of the court below, as to the parties to the record, is entirely abrogated, and the cause then stands in the court below precisely as if no trial had occurred. The case is then remitted to that court in precisely the same condition, in all respects, as it occupied before the trial in that tribunal. The decree, by its reversal, is in effect expunged from the record; and the court has the same power over the record which it possessed before its decree or judgment was rendered. It then follows, that when a decree is reversed, and the cause is remanded without specific directions, the circuit court has the power to allow amendments to the pleadings, and to permit the introduction of other evidence."

The objection, therefore, is without force. It was within the discretion of the circuit court to allow the pleadings to be amended, and the introduction of other and further evidence,

to such extent as should seem necessary and conducive to justice; but in allowing amendments or new pleadings, in the introduction of further evidence, and in any decree it might thereafter render in the case, the court must not fail to recognize and observe the principles announced in the opinion of the superior tribunal. The history of this case furnishes a striking illustration of the application of the rule announced. The litigation was begun in 1861, by a bill filed by appellee Ellis. After the case had been brought to this court for the second time, and remanded to the circuit court, Ellis amended his bill, and thereby obviated the difficulty that till then had prevented his recovering; and no reason is perceived why any of the parties might not, after the third remandment, so amend their "bills, pleas, answers and replications, on such terms as the court may deem proper, so that neither party be surprised nor unreasonably delayed thereby." (Starr & Curtis' Stat. p. 409, sec. 37.) And, particularly, for a defendant to file a cross-bill, after having answered. (Ibid. p. 407, sec. 30.) And it was equally within the discretion of the court, even after the third remandment, to allow a stranger to the record to intervene in the case, upon proper showing made by him.

But the controlling questions in this case are, first, whether, by the amendment to the pleadings made since the last trial in this court, any new issues have been raised, and, if so, what those issues are, and whether or not the court erred in its decree in respect thereto; and second, whether the court erred in denying relief to the intervenors, and dismissing their petition.

The cross-bill exhibited by appellant Cable, showed the exhibiting of the original bill by Ellis, in 1861, against Waugh, Sisson and Rathbun; that Ellis sought relief against all three defendants, and particularly to have Waugh declared equitably a party to the contract under which Ellis claimed both the Sisson and Waugh mortgages were to be released and

surrendered; that by subsequent bills all the parties in interest were brought before the court, and the then three causes, under the Ellis bill, the Sumner bill and the Cable bill, were consolidated; that issue was taken on all the bills, testimony taken, a trial had, decree rendered, appeal and remandment; that on the next trial, in 1878, Ellis amended his bill and answers, alleging the verbal agreement of Waugh to release the notes and mortgage he held, and asking that Cable, the assignee of Waugh, and Waugh's heirs, should now be required to do so; that issue was taken on this amended Ellis bill, testimony taken, a trial had, decree rendered, which, on appeal, was reversed, and the cause remanded; then shows the character of the Sumner bill, and the Cable bill, and the relief sought under each; then asks that his original bill and exhibits may be taken as part of his cross-bill, and refers to the record in all the cases for statement of fact, and that the testimony taken under those bills might be considered as taken under his cross-bill. He then says he had no personal knowledge of the contracts and agreements relied upon by Ellis and the other parties litigant, before he bought the Waugh notes and mortgage, and as to the verbal contract relied on by Ellis, he never heard of it till Ellis disclosed it in his amended bill and the evidence then taken, and now he could not learn the truth, because Waugh was dead; reaffirmed all his averments in his previous pleadings, as of his own knowledge, as true; that he did not believe the verbal contract set up by Ellis was true, but that up to the time Ellis disclosed that verbal contract, he, Cable, was entitled to the specific relief he had asked. He further alleged that the litigation on his part all grew out of Ellis' neglect to set up the verbal contract in his pleadings and evidence, and if Ellis should be entitled to priority over him because of that contract, it was then proper for him to set up, by cross-bill, certain equities to which he was entitled. Now, it is perfectly evident that down to this point, appellant Cable had contented him-

self with informing the court, with some particularity, as to the preceding steps in the case, not because he was required to do so, for the statute expressly excused him from reciting, in his "cross-bill, any of the pleadings or proceedings in the case in which it" was to be filed, (Starr & Curtis' Stat. p. 408, sec. 31,) but because he intended, no doubt, some advantage would or might thereby accrue to him. But, however intended, with respect to every issue arising under the pleadings and evidence, as the same stood on the last appeal to this court, as between the equities of Ellis, and those claimed by Cable as the purchaser and assignee of Waugh, this court had solemnly adjudged priority to Ellis. Appellant Cable could not, under the guise of exhibits to his cross-bill, bring all the previous pleadings and evidence into the case as new matter,— infuse life into dead issues by repetition,—and thus require the court to reconsider and re-adjudicate questions it had previously passed upon.

Summarizing the averments of the cross-bill under which the new equities must arise, if at all, we have: the charge that Ellis was negligent in not sooner setting up his verbal contract with Waugh; that he did not know of this verbal contract when he bought the Waugh notes and mortgage; that before he did buy those notes of Waugh, this court had decided that the Waugh mortgage was a first lien; that he bought in good faith, and expended therefor a large sum of money; that Ellis ought not to have a first lien, because the amount due him exceeded the value of the land, and because, further, Waugh was insolvent, and he, Cable, could not have recourse for his expenditures on Waugh; that he offered to pay Ellis the *principal* of his debt; that Ellis' *laches* in disclosing his alleged verbal agreement with Waugh ought to operate to prevent Ellis having interest on his original debt; that Ellis' claim is against Rathbun, and not against Waugh; that his rights ought to be subrogated to Waugh's rights in the lands; that he has requested Ellis to collect his debt from

Rathbun, but Ellis, intending to cheat him, refused to do so; that, at most, under the contract, Waugh's mortgage was to be released only as to part, etc. He further charges, that before the third appeal to this court, he gave the Rock Island and Mercer County Railroad Company, in which he was largely interested as a stockholder, permission to build its road over the lands, and establish thereon depot facilities, and agreed to make the railroad company a deed therefor when he should get title; that he laid off a town about the depot, and allowed various persons to improve the lots and build thereon their dwelling houses, and when he should get title he was to make them deeds, on payment of an agreed price; that his contract with these lot-occupiers was not in writing, and they had not paid him anything on the contracts, or for rent therefor, and that the railroad company and these lot-occupiers ought to be allowed for their improvements.

As will be seen, appellant lays great stress upon the fact that in buying the Waugh notes and mortgage he relied upon the previous decisions of this court declaring this Waugh mortgage a first lien, and having so relied, the court ought now to protect him, and those under him, to the extent of their permanent improvements, at the expense, if need be, of Ellis. A moment's consideration of this record will suffice to show into how serious an error appellant has fallen. He bought the Waugh notes and mortgage early in 1872, and on September 14, 1872, exhibited his bill of foreclosure in the circuit court of Mercer county, (removed by change of venue to Peoria county,) in which he claimed to be the owner of these mortgage notes, by assignment from John M. Waugh and Henry B. Ellis. As before stated, this litigation began by the filing of the Ellis bill in 1861, and was followed by the Sumner & Co. bill, filed June 9, 1865. The case first reached this court on the appeal of Sumner & Co., and a decision announced in this court at the September term, 1869. (*Sumner et al. v. Waugh et al.* 56 Ill. 531.) On this appeal,

there was brought before this court the issues arising under the Sumner bill, to which Waugh, H. B. Ellis, Sisson, Thomas B. Ellis, and others, were made parties defendant. This bill was taken as confessed, all the defendants being in default except Thomas B. Ellis and H. B. Ellis, both of whom answered. In that bill, Sumner & Co., as the assignees of Sisson, asked foreclosure of the Sisson mortgage. In his answer, Thomas B. Ellis gave a history of the transaction out of which this Sisson mortgage arose, set out the written contract of September 30, 1858, and insisted that both this Sisson mortgage and the Waugh mortgage, (by which is meant the mortgage given by Thomas B. Ellis, when he was the owner of the premises, to Waugh and H. B. Ellis, and by them assigned to Cable,) were, by the contract, to be released and surrendered, and that, as between Thomas B. Ellis and the assignees of Sisson, Ellis was entitled to priority. In addition to his answer, T. B. Ellis exhibited his cross-bill against Sumner & Co. Waugh and Sisson were not made parties defendant to this cross-bill; and while, in his cross-bill, as in his answer, Ellis set up all the facts and circumstances under which he claimed priority as to both the Sisson and the Waugh mortgages, it is manifest that the issue before the court, and on which it was called upon to pass, was as to the equities and priorities as between Sumner & Co., assignees of Sisson, and T. B. Ellis, and not as between T. B. Ellis and Waugh. Waugh was not seeking any relief,—was not attempting to foreclose his mortgage,—and the question of equities and priorities under the Waugh mortgage, as between Waugh and T. B. Ellis, was not, therefore, before the court for decision.

The state of the record, the issues arising on the pleadings, and the testimony in the case, and the decision and opinion of this court in *Sumner* v. *Waugh*, were all well known to appellant before he bought the Waugh notes and mortgage. In his answer to Ellis' amended bill of November 25, 1878, he says: "Before purchasing said mortgage, in 1872, from said

John M. Waugh, then the legal owner thereof, he (appellant) caused a full and careful examination to be made into all the pleadings and testimony of the said Thomas B. Ellis, and all the defences and claims which said Ellis had set up against the said mortgage, during all the time for eleven years preceding the said purchase by this respondent." If this is true, and it must be taken as true against appellant, he knew when he bought into this litigation, that this court had never had before it for decision the question of the conflicting equities between T. B. Ellis and J. M. Waugh, and arising under the Waugh mortgage, for, before the case reached this court for the second time, appellant had made his arrangement with Waugh, had become the speculative purchaser of the Waugh notes and mortgage, and had exhibited his bill to foreclose the same.

Turning our attention, now, to the consideration of the remaining averments of appellant in his last cross-bill, it will be observed that all of the facts averred as the basis of the alleged new equities, existed prior to the last appeal to this court,—that is to say, prior to the October term, 1878, of the Peoria circuit court,—and they were as perfectly within the knowledge of appellant then, as at the time he exhibited this cross-bill. If, for any reason, his pleadings at that time did not disclose all the facts within his knowledge necessary for him to maintain his alleged right of action or establish his defence, it was clearly his duty to have amended them before trial, that upon the trial the court might have before it all facts relied upon by any of the parties, and affecting their rights. But if the cross-bill should be regarded simply as an amendment of his previous pleadings, the question still remains, whether any issuable facts are disclosed in this cross-bill that were not included in his previous pleadings, and in issue before the court when the case was last before this court.

*And first*—We may dismiss all that part of his cross-bill having reference to the supposed equities of the Rock Island

and Mercer County Railroad Company and the other occupiers of lots, with the remark, that it was entirely gratuitous on the part of appellant, and wholly unnecessary for him, to interpose in their behalf, since they were each and all before the court in their own behalf, by their intervening petitions. It nowhere appears that they had constituted appellant their representative, nor that they were not entirely competent to carry on their own litigation without his active interference.

*Secondly*—With respect to the remaining charges and averments in appellant's cross-bill, an examination of the record clearly shows, that in substance and effect, if not in form, they were each and all contained in his former bill, answers, petition for a rehearing, and other pleadings, and that in respect thereto, testimony had been taken to the fullest extent by all the parties, so that there was before this court, on the third appeal, not only the requisite and proper parties, but a record disclosing all these matters properly at issue.

The *gist* of appellant's various charges is, that although he bought *pendente lite*, he was nevertheless an innocent purchaser of the Waugh notes and mortgage, for value, and without notice of the equities of Thomas B. Ellis arising under the verbal contract with Waugh, as first disclosed by Ellis in his amended bill of November 25, 1878. In whatever form presented, appellant's alleged right of priority over T. B. Ellis comes to this as its foundation. Now, in his answer to this amended bill of Ellis, of November 25, 1878, setting up this verbal contract for the first time, appellant shows, that "before purchasing said mortgage in 1872, from said John M. Waugh, then the legal owner thereof, he caused a full and careful examination to be made into all the pleadings and testimony of the said Thomas B. Ellis, and all the defences and claims which said Ellis had set up against the said mortgage during all the time for eleven years preceding the said purchase by this respondent, and it was not in any way claimed by said Ellis at that time, or at any other time until

the filing of said amended bill, more than twenty years after said supposed contract was made, that any of the defences in said amended bill ever existed; and respondent says, that even if such contract as is in said amended bill set up, did, in fact, exist, the said Thomas B. Ellis, by his ——— and great and inexplicable delay, is estopped to set up or claim the benefit of the same in any way; * * * that more than twenty years have elapsed since the making of the same, and more than four years have elapsed since the death of the said John M. Waugh; during all said twenty years, and during sixteen years of Waugh's life after the supposed contract, said Ellis never, at any time, in any way mentioned or spoke of or pleaded the same, notwithstanding he might have done so twenty years before filing said amended bill, and notwithstanding this suit has been pending since March, 1861, during all which time said Ellis has never mentioned or set up or pleaded or testified about such a contract; and this respondent sets up and pleads the said lapse of time as a bar to any action on such contract now; * * * that it was a contract for the sale and surrender of an interest in lands, and that no note or memorandum in writing, signed by said John M. Waugh, was ever made, and respondent sets up and pleads and expressly claims the benefit of the Statute of Frauds and Perjuries; * * * that said contract was and is unjust, unfair, and its enforcement will deprive this respondent, and the heirs and estate of said Waugh, of a mortgage and notes on which there was then nearly $14,000 due, and on which there is now due nearly $30,000, without any consideration." And after the issues arising on this answer of appellant (and all the other issues in the case,) had been passed upon and decided by this court, (*Ellis et al.* v. *Sisson et al.* 96 Ill. 105,) this appellant, by his petition for a rehearing, challenged the correctness of that decision and opinion, presumably upon every existing ground, including the very right of Ellis to exhibit his amended bill of November 25,

1878. This court, in its further opinion, said: "After a careful consideration of the grounds of the petitions, upon the merits of the controversy between the parties and the questions heretofore presented, we feel satisfied with our opinion and judgment, and see no reason for changing the same." And as to the right of Ellis to amend his bill, as he did, November 25, 1878, and which was the new question presented on the rehearing, it was said: "We think we may properly refuse to this petitioner a rehearing in order to afford him an opportunity to present for consideration this new point which he failed to make before in the court." From all which it satisfactorily appears, that when this cause was last before this court, there was presented for its consideration and determination the conflicting rights of all the parties to this record (not intending here to include intervenors) upon issues properly arising on the pleadings and evidence; and that within those issues were embraced the alleged new equities set up and assumed to be disclosed in appellant's cross-bill of May 4, 1881. It follows, therefore, that the matters in issue between the parties to this record, are, by the former determination and judgment of this court, *res judicata.* Litigation must, at some point, cease. In this case, the end had been reached,—the rights of the parties had been found and declared, and the controlling legal and equitable principles announced, and the rights of the parties and the law of the case became fixed and determined by the former decision of this court.

The second controlling inquiry, whether the circuit court erred in denying relief to the intervenors and dismissing their petitions, will now be considered.

After this cause had for the third time been remanded to the circuit court, the Rock Island and Mercer County Railroad Company, and fifteen private persons, on application, were allowed to intervene in the cause, upon the representation that they were interested in independent and separate parts

of the subject matter of the litigation, and might be affected by the orders and decrees of the court in the cause. These intervenors all claim under appellant Cable, and whatever rights they may have in the premises have grown up by their reliance upon contracts, arrangements or licenses made with and derived from him. Cable's interest in the premises rests, primarily, upon the assignment to him of the notes, secured by the Waugh mortgage, in 1872. That interest, as we have seen, he acquired pending this litigation. Subsequently, it is claimed, Cable acquired color of title to the premises under a sale upon *fieri facias*, upon judgment recovered by one Wharton against T. B. Ellis, and *mesne* conveyances from Wharton to Sumner, and by contract of sale by Sumner to Cable, and possession in Cable, by his tenant, Sisson. This interest also was acquired by Cable pending this litigation.

When this cause was before us on the third appeal, and before the record showed a sale or conveyance by Sumner to Cable, we had occasion to say: "Wharton was an execution purchaser, under an execution issued upon a judgment against T. B. Ellis, rendered in 1871. Although the legal title then appeared to be in Ellis, it was but a naked legal title, the equitable interest being in Sisson and Rathbun, or Sisson, under the contract of September 30, 1858, and Ellis having tendered a conveyance, which had been refused to be received. The judgment and sale were long after this litigation had been commenced, and while it was pending, and the purchasers would be bound by the result of this suit, as purchasers *pendente lite*." With the doctrine as there announced we are now content.

If, therefore, the grantees of Cable took conveyances under circumstances where the doctrine of *lis pendens* was applicable, as we have seen they did, Cable, and those claiming under him, would be equally bound. He could acquire from or through his grantors no greater interest than they possessed, and if they were bound as purchasers *pendente lite*, so

was he. Being himself bound by the result of this pending suit, his grantees, and those claiming rights in the premises under him, would also be bound to the same extent. It follows, that Cable, or another claiming under him, acquired no interest in the premises under the execution sale on the Wharton judgment, which could in any way affect the equities of T. B. Ellis in the premises in litigation.

The rights, then, of these intervenors, whatever they may be, have their origin, and primarily rest upon, the interest in the premises acquired by appellant Cable, *pendente lite,* under the assignment to him of the Waugh notes and mortgage. That interest, as this court has adjudged, was acquired under such circumstances, and was so taken by him, as that it must be held to be subordinate to the equitable rights of Thomas B. Ellis in the premises. We have held in this case, in effect, if not in express terms, that appellant Cable, having purchased pending this suit, was chargeable with notice of the rights and equities of Thomas B. Ellis in the premises involved in this suit, and is therefore bound by the result of the suit. If this is true of Cable in respect of his purchase and assignment of the Waugh notes and mortgage, and the interest in the premises thereby acquired by him, it must also be true as to these intervenors, who, under license from Cable, and by no other right or authority, enter upon the premises in litigation, and make thereon improvements, *pendente lite.*

But we are, by the pleadings and testimony, relieved from the necessity of placing our decision upon the sole ground of notice to intervenors by pending suit, for, in their several petitions, they admit that their rights have been acquired since the suit commenced, and that they have no deeds from Cable to the lots they severally occupy,—only the promise of a deed from him when he should get title; and it is in evidence, out of the mouth of Cable himself, and undisputed by intervenors, that when they came to him for permission to build their houses and make their other improvements, for

the value of which intervenors now ask a first lien on the premises, he told them the lands were in litigation; that he could not make them deeds; that he would make them deeds when he should get title, at an agreed price, and on payment of the price; that they better set their houses upon blocks, so they could be moved, if necessary, and that he never did make them, or either of them, deeds, nor did they, or either of them, ever pay him the purchase price, or anything on account of rent; and as to the railroad company, which, it seems, was almost entirely owned by appellant Cable, it built its road and established its depot upon the lands, under the license of Cable, and on his verbal promise to deed the lands occupied by it, without charge, when he should get title. The case made by the intervenors themselves shows that they had actual notice that the lands they were about to occupy were in litigation; that the person with whom they were about to deal did not have and could not give them title; that they were not required to pay anything, and did not, in fact, pay anything, by way of purchase money, and, being presumed to know the law, that the contract between them and Cable as to the several lots, not being in writing, could not be enforced by law; and, in addition to all this, they were advised by the very man with whom they claimed to have valid contracts, not to attach their buildings to the realty, so as to pass by a conveyance of the land, but to put them upon blocks, so they might move them off the land, if necessary to avoid the effect of an adverse decision of the pending litigation; and yet, in spite of this actual notice and timely caution, they go into possession, and make improvements claimed to be of permanent value to the realty, and after the adverse decision against which they were cautioned, has come, they voluntarily make themselves parties to the pending litigation, and ask to be paid first out of the proceeds of the sale of the premises, to the full extent of the value of their improvements.

The general rule of law as to improvements unquestionably is, that improvements made upon real estate, of a fixed and permanent character, and attached to the realty, by one who has no title or interest in the premises, and without the consent of the owner of the fee, become a part of the realty, and vest in the owner of the fee. (*Mathes* v. *Dobschuetz*, 72 Ill. 438; *Dooley* v. *Crist*, 25 id. 556.) But courts of equity have not hesitated to soften the harshness and rigor of the rule of law, when the circumstances of the case and the relation of the parties required it to be done to meet the ends of justice. Counsel for appellant and the intervenors have brought together, in their very able briefs, many of the adjudged cases in this court illustrative of this; and through the research of counsel for appellee Ellis, our attention has been directed to still another line of cases, and bearing upon this question, and while no one of these cases, because of variant and distinguishing circumstances, can be accepted as decisive of the question here, or as embodying all the elements of this equitable doctrine as recognized and applied by this court, an examination of all the cases has satisfied us that the true rule is, that where improvements upon real estate, of a permanent character, are made in good faith by one in possession, believing himself to be a *bona fide* purchaser or owner for value, and under circumstances justifying such belief, and the expenditure is reasonable in amount and of benefit to the estate, allowance may, in a court of equity, be made therefor; but the person claiming such allowance will be charged with the value of the use and occupation of the premises. See *McConnel* v. *Holobush*, 11 Ill. 61; *Breit* v. *Yeaton*, 101 id. 242; *Bradley* v. *Snyder*, 14 id. 263; *Miller* v. *Thomas*, id. 428; *Gardner* v. *Diederichs*, 41 id. 158; *Kinney* v. *Knoebel*, 51 id. 112; *Roberts* v. *Fleming*, 53 id. 196; *Smith* v. *Knœbel*, 82 id. 392; *Worth* v. *Worth*, 84 id. 442; *Ebelmesser* v. *Ebelmesser*, 99 id. 541. There is, however, no principle of law permitting the owner or mortgagor, or his grantee, or a subsequent pur-

chaser with notice of prior equities of first purchaser, to make improvements on the premises and have a prior lien therefor, but such improvements will pass upon sale of the premises. *Martin* v. *Beatty*, 54 Ill. 100; *Dart* v. *Hercules*, 57 id. 446; *Wood* v. *Whelen*, 93 id. 153.

Applying these principles to the case made by the intervenors, it is obvious they are not in a condition to ask the aid of a court of equity. They are not *bona fide* purchasers,— they are not purchasers at all; and the improvements were not made by them in good faith, believing themselves to be the owners, or under circumstances that would justify such belief. Before a dollar was expended by them, they knew the lands were in litigation, and had been in that condition for many years; that the person they were about to deal with neither had nor claimed title; neither would he take the purchase money nor make them deeds. At most, he would only agree to take a stipulated price, and make them deeds should he get title. They went upon the premises and made the improvements, knowing all this, with their eyes wide open, and taking all the chances. What rights or equities they may have, if any, as against appellant Cable, we are not called upon to decide, and express no opinion; but as against appellees, these intervenors have not shown themselves entitled to the equitable relief they ask. No distinction is perceived, in principle, in the cases made by the several intervenors; and if the Rock Island and Mercer County Railroad Company find it necessary to take private property for its corporate use, provision is made in the law for such case, and another forum provided to which resort must be had for that purpose.

It must be added, in conclusion, we have patiently and laboriously examined this most voluminous record, and have given careful consideration to the points and authorities cited by counsel in their able and exhaustive arguments and briefs, with a view to the final disposition of this case. For more than a quarter of a century, this case, in its various phases,

has been before the courts of this State, and it has seemed to us that the time had come when the contention of the parties to this record should cease, if it could be done without violating those principles of law by which courts are governed and controlled; and it is a matter of satisfaction to the court, as it must be to the parties, that on this fourth appeal we have found it possible, by the application of well recognized legal and equitable principles, to give to this case its final determination.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CRAIG, dissenting.